**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                            :
                                                            :
GREGORY COPELAND,                                           :     19 Civ.
                                       Plaintiff,           :
                                                            :
                  – against –                               :
                                                            :
THE LEGAL AID SOCIETY, JENNIFER WILLIAMS,                   :     **Complaint and Jury Demand**
and ADRIENE HOLDER,                                         :
                                                            :
                                       Defendants.          :
                                                            :
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Plaintiff, Gregory Copeland, by and through his attorney, Corey Stark PLLC, complains of The Legal Aid Society ("Legal Aid"), Jennifer Williams ("Williams"), Adriene Holder ("Holder") and respectfully sets forth to the Court as follows:

## NATURE OF THE ACTION

1.      This is an action to recover damages for Defendants' breach of contract and discrimination on the basis of gender in the terms, conditions, and privileges of employment under Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the New York Executive Law Section 290, *et seq.* (the "NYSHRL"), and the Administrative Code of the City of New York Section 8-801, *et seq.* (the "NYCHRL").

## JURISDICTION

2.      The Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(4), and 1367.

## VENUE

3.     Venue is proper in the Southern District of New York, pursuant to 28 U.S.C. § 1391, because the Southern District of New York is the judicial district in the state in which the unlawful practices are alleged to have been committed.

## PREREQUISITES

4.     Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which was accepted for filing and investigation.

5.     On March 28, 2019, the EEOC issued a Notice of Right to Sue ("Right-to-sue Letter") which permitted Plaintiff to file a civil action within ninety days of Plaintiff's receipt of the Right-to-sue Letter.

6.     Plaintiff commenced this action within ninety days of his receipt of the Right-to-sue Letter.

7.     Before filing the complaint in this action, Plaintiff caused a copy of the same to be served upon the Corporation Counsel of the City of New York.

## PARTIES

8.     Plaintiff is male.

9.     At all times hereinafter mentioned Plaintiff was a resident of the City and State of New York.

10.     At all times material herein Plaintiff was an "Employee" entitled to protection within the meaning of Title VII, the NYSHRL, and the NYCHRL.

11.     Legal Aid is a domestic not-for-profit corporation with its principal office located at 199 Water Street, within the City, County, and State of New York.

12.     Upon information and belief, Legal Aid is the oldest and largest provider of legal representation to the indigent.  It has a civil practice, which includes an immigration unit, a criminal defense practice, and a juvenile rights practice.

13.     Legal Aid is an "Employer" within the meaning of Title VII, the NYSHRL, and the NYCHRL.

14.     At all relevant times Williams was the Deputy Attorney-in-charge of Legal Aid's Immigration Unit.

15.     Williams actually participated in, and aided and abetted, the conduct giving rise to the discrimination and harassment claims set forth herein.

16.     Upon information and belief, Williams is a resident of the State of New York and the County of Nassau.

17.     At all relevant times Holder was the Attorney-in-charge of Legal Aid's Civil Practice.

18.     Holder actually participated in, and aided and abetted, the conduct giving rise to the retaliation and harassment claims set forth herein.

19.     Upon information and belief, Holder is a resident of the City, County, and State of New York.

20.     This action arises out of Legal Aid's wrongful, illegal, and tortious conduct within the State of New York.

## **BACKGROUND**

21.     Plaintiff earned a Bachelor of Arts degree from Brown University in 2004.

22.     Plaintiff earned a *Juris Doctor* degree from Cardozo Law School in 2009.

3

23.    Plaintiff is an attorney duly licensed to practice in the courts of the states of New York, New Jersey, and Connecticut, as well as numerous federal district courts.

24.    Plaintiff is an experienced litigator who served as an Associate at Debevoise & Plimpton for nearly eight years.

25.    Plaintiff commenced his employment by Legal Aid on June 1, 2017, as a Staff Attorney.

26.    At all times during his employment by Legal Aid Plaintiff was a litigator in the immigration unit.

27.    In May 2018 Legal Aid promoted Plaintiff to Supervising Attorney and awarded him a compensation increase.

28.    At all times during the course of his employment, and until the last day of his employment, Plaintiff performed his services competently, faithfully, diligently, and in an outstanding manner.

29.    Plaintiff was integral in defending the due-process rights of non-citizen community members in federal courts in multiple high-profile immigration matters that have received national and international attention.

30.    Plaintiff's supervisors and colleagues have recognized his excellent work performance by describing it as "tremendous," "great," and "amazing."

31.    Legal Aid has described Plaintiff's tireless effort and success in fundraising materials and touted his success in multiple press releases.

32.    Plaintiff's supervisees have described him as a role model and one of the best supervisors ever.

## SUPPRESSION OF ETHICAL VIOLATIONS & RETALIATION

33.    In or around July 2018 Plaintiff and his colleague Sarah Gillman ("Gillman") began to notice that Williams was developing a conflict of interest by favoring the good of a non-client over the good of a client of Legal Aid.

34.    For example, Williams was encouraging the non-client to take actions that would be detrimental to Legal Aid's client.

35.    Plaintiff and Gillman confronted Williams, who denied the conflict of interest yet appeared to have continued to engage in conduct that was potentially detrimental to Legal Aid's client.

36.    In July 2018 Plaintiff and Gillman discussed the inappropriate conduct with Hasan Shaffiquallah ("Shaffiquallah"), who was the Attorney-in-charge of Legal Aid's Immigration Unit as well as Williams's supervisor, and Shaffiquallah assured them that he would look into the matter.

37.    When it became clear that the conflict-of-interest issue had continued and become more pronounced, Plaintiff and Gillman confronted Williams again, and she responded, "Fuck you.  Who do you think you are?  You think I do not know about conflicts?"

38.    On October 21, 2018, Williams wrote to Plaintiff and Gillman, and conceded that she had become too close to Legal Aid's client's wife, and stated that she would no longer be involved in the client's case.  Williams also acknowledged her unprofessional conduct in retaliation to Plaintiff and Gillman.

39.    Shortly thereafter, on October 22, 2018, Plaintiff and Gillman reported Williams's inappropriate conduct to Shaffiquallah for the second time and advised him that they intended to

discuss the conflict and Williams's efforts to obstruct the investigation pertaining to the client and the client's wife with Legal Aid's general counsel.

40.     Shaffiquallah directed Plaintiff and Gillman not to involve Legal Aid's general counsel and instead Williams convened a meeting on October 23, 2018, to discuss the conflict-of-interest report.  During this meeting Williams lost her composure and admitted to having a conflict of interest by favoring the non-client's welfare over the welfare of Legal Aid's client.

41.     After the meeting Shaffiquallah agreed that there was a problem and apologized to Plaintiff and Gillman that William's conduct was so "unprofessional" and "crazy."

42.     On October 30, 2018, Shaffiquallah called a meeting with Plaintiff and Gillman and admitted, "Everything that you have said is justified," while sobbing uncontrollably, and stated that Williams's involvement in the matter would end due to her conflict of interest and the clear risk of prejudicing Legal Aid's client.

43.     Yet notwithstanding Shaffiquallah's apparent epiphany, and the report of Williams's ethical violations which could compromise the interests of its own client, Legal Aid surreptitiously allowed Williams to continue to work on the very matter that created the conflict of interest, and failed to investigate or address complaints about Williams's unethical conduct.

44.     Almost immediately after the October 30, 2018, and after having repeatedly described Plaintiff's work as "amazing," Shaffiquallah began contriving complaints about Plaintiff's performance so as to manufacture a pretext for Legal Aid to terminate his employment.

45.     In addition, after the October 30, 2018, meeting, Shaffiquallah pretended to be unaware that Plaintiff and Gillman had complained about Williams's conflict of interest, and again instructed Plaintiff not to raise the issues with Legal Aid's general counsel.

6

46.     The Legal Aid client whose interests were being compromised thereupon complained that his confidential information was being leaked, making it obvious that Williams remained involved in the case, despite her conflict of interest and wrongful disclosure of information.

47.     Legal Aid's client reiterated this complaint to Holder, and Plaintiff informed Shaffiquallah there was a rapidly escalating risk of irreparable prejudice to Legal Aid's client's legal interests without immediate remedial action.

48.     On November 5, 2018, despite Shaffiquallah's direction not to involve his supervisors, Plaintiff and Gillman escalated their complaint about William's unethical conduct by alerting Holder and Legal Aid's general counsel.

49.     Yet even at this stage, when its highest executives had been made aware of the problem, Legal Aid still did not conduct an investigation or implement any remedial measures.

50.     On November 12, 2018, Plaintiff notified the outside law firm assisting with the matter (which also happens to be a major source of donations for Legal Aid) of the existence of the conflict of interest and of his efforts to address the issue internally with Legal Aid.

51.     Thereafter the retaliatory harassment and disparate treatment that Plaintiff was subjected to for raising the conflict-of-interest issue only intensified.  For example, Shaffiquallah began criticizing Plaintiff for matters he had previously approved, and for which he had commended Plaintiff.

52.     On November 17, 2018, Plaintiff formally wrote Legal Aid's general counsel and Holder, the Attorney-in-charge of Legal Aid's criminal practice, to request that Legal Aid resolve the conflict of interest.

7

53.    On November 27, 2018, Plaintiff and Gillman met with Holder, Shaffiquallah, and the Attorney-in-charge of Legal Aid's Law Reform Unit.  Instead of commencing an investigation or implementing measures to cure the ethical violations, Legal Aid's top officials threatened to pursue ethical violations against Plaintiff and Gillman.

54.    Compounding the problem, Shaffiquallah admitted during the November 27, 2018, meeting that he had allowed Williams to remain surreptitiously involved with the matter for which she had created the conflict of interest.

55.    Following the November 27, 2018, meeting the retaliatory harassment and disparate treatment that Plaintiff was subjected to for raising the conflict of interest issue only intensified.  For example, Legal Aid's top officials criticized Plaintiff for raising the ethical violations and told him that making the complaint was an exercise of bad judgment.

56.    On December 4, 2018, Plaintiff made a written complaint of retaliation based on his having complained about the ethical violations.

57.    On December 5, 2018, Gillman made a written complaint of retaliation based on her having complained about the ethical violations.

58.    On December 6, 2018, Defendants terminated Plaintiff's employment without notice or cause.

59.    Upon information and belief, Defendants' decision to terminate Plaintiff's employment was in retaliation for, and motivated by, his complaints about Legal Aid's ethical violations.

60.    On December 6, 2018, Defendants also terminated Gillman's employment without notice or cause.

61.     Upon information and belief, Defendants' decision to terminate Gillman's employment was also in retaliation for, and motivated by, her complaints about Legal Aid's ethical violations.

## GENDER DISCRIMINATION

62.     Upon information and belief, Plaintiff was one of six males assigned to Legal Aid's Immigration Unit, who represented a very small minority of the persons assigned to that unit.

63.     Legal Aid's management was well aware of Plaintiff's gender.

64.     During Plaintiff's employment by Legal Aid, Defendants created, promoted, and maintained a pervasively hostile work environment.

65.     Plaintiff was singled out for harassment based upon his gender.  For example: members of Legal Aid's staff opposed his promotion because he was male; staff members constantly falsely accused Plaintiff of engaging in inappropriate sexual relations with colleagues; management-level colleagues ridiculed Plaintiff because of his gender and treated him differently than his similarly situated employees, accusing him of being sexist simply for asking a subordinate female employee not to yell at him; and Williams made sexual advances toward Plaintiff.

66.     Defendants' campaign of harassment and disparate treatment continued until December 6, 2018, when Defendants terminated Plaintiff's employment without notice or cause.

67.     Defendants offered a non-discriminatory reason for the termination of Plaintiff's employment.

68.     Upon information and belief, Defendants' purported reason for terminating Plaintiff's employment was a pretext for discrimination, and it was instead Plaintiff's gender that was the actual motivating factor in Defendants' decision to terminate Plaintiff's employment.

**RETALIATION**

69.     In July 2018 Plaintiff made an oral complaint of gender discrimination to Shaffiquallah.

70.     Defendants failed to investigate or address Plaintiff's discrimination complaint.

71.     After Plaintiff made his complaint, the discrimination and harassment that he was subjected to only intensified.

72.     Plaintiff continued to be subjected to disparate treatment and a hostile work environment and continued to made oral complaints of discrimination to Shaffiquallah, yet Defendants failed to investigate or address Plaintiff's discrimination complaints.

73.     On December 4, 2018, Plaintiff made a written complaint of gender discrimination.

74.     On December 6, 2018, only two days after Plaintiff made his written complaint of discrimination, Defendants terminated Plaintiff's employment without notice or cause.

75.     Upon information and belief, illegal retaliation motivated the decision to terminate Plaintiff's employment.

**AS AND FOR A FIRST COUNT**
(Breach of Contract)

76.     Plaintiff repeats and realleges each and every allegation contained in paragraphs of the Complaint numbered "1" through "75" inclusive with the same force and effect as if fully set forth at length herein.

77.     The performance of professional services for Legal Aid's clients as a duly admitted member of the Bar was at the very core, and was indeed the sole purpose, of Plaintiff's employment by Legal Aid.

78.     Plaintiff was an employee of Legal Aid but remained an independent officer of the court responsible, in a broader public sense, for his professional obligations, and his duties as an attorney and as an employee of Legal Aid were so closely linked as to be incapable of separation.

79.     Intrinsic to the employment relationship was an essential compact that in the conduct of Legal Aid's professional practice both Plaintiff and Legal Aid would comply with the prevailing rules of conduct and the ethical standards of the legal profession.

80.     Plaintiff had a duty to report any substantive questions as to another lawyer's honesty, trustworthiness, or fitness.

81.     Insisting that an attorney must act unethically and in violation of the primary ethical rules amounted to nothing less than a frustration of the only legitimate purpose of the employment relationship.

82.     Consistent with his obligations, Plaintiff reported Williams's unethical behavior and the conflict of interest he became aware of.

83.     Legal Aid had a duty to make sure that each provision of the Code of Professional Responsibility was incorporated as an implied-in-law term in every employment relationship between or among attorneys.

84.     Legal Aid breached this duty by ignoring Plaintiff's complaints and allowing Williams to continue to work on the matter at issue notwithstanding an admitted conflict of interest.

85.     Legal Aid also breached its duty by terminating Plaintiff for reporting Williams's conduct and for complaining about Legal Aid's failure to comply with the rules of professional responsibility, thereby breaching the implied-in-law contract.

86.     As a direct and proximate result of Legal Aid's breach of the implied-in-law contract, Plaintiff has sustained substantial damages, the amount of which is to be determined by an arbitrator at the hearing of this Action.

### AS AND FOR A SECOND COUNT
(Title VII Discrimination)

87.     Plaintiff repeats and realleges each and every allegation contained in paragraphs of the Complaint numbered "1" through "75" inclusive with the same force and effect as if fully set forth at length herein.

88.     Legal Aid unlawfully discriminated against Plaintiff with respect to the terms and conditions of his employment because of his gender.  By reason thereof, Legal Aid has violated Title VII.

89.     As a direct and proximate result of Legal Aid's unlawful discriminatory practices as described herein, Plaintiff was humiliated and embarrassed within the work atmosphere, which was brought about by virtue of Legal Aid's systematic and continuous unlawful harassment and multiple discriminatory practices and acts.

90.     As a direct and proximate result of Legal Aid's discriminatory practices, Plaintiff has also sustained significant economic damages.

### AS AND FOR A THIRD COUNT
(NYCHRL Discrimination)

91.     Plaintiff repeats and realleges each and every allegation contained in paragraphs of the Complaint numbered "1" through "75" inclusive with the same force and effect as if fully set forth at length herein.

12

92.     Legal Aid unlawfully discriminated against Plaintiff with respect to the terms and conditions of his employment because of his gender.  By reason thereof, Defendants have violated the NYCHRL.

93.     As a direct and proximate result of Defendants' unlawful discriminatory practices as described herein, Plaintiff was humiliated and embarrassed within the work atmosphere, which was brought about by virtue of Defendants' systematic and continuous unlawful harassment and multiple discriminatory practices and acts.

94.     As a direct and proximate result of Defendants' discriminatory practices, Plaintiff has also sustained significant economic damages.

## AS AND FOR A FOURTH COUNT
(NYSHRL Discrimination)

95.     Plaintiff repeats and realleges each and every allegation contained in paragraphs of the Complaint numbered "1" through "75" inclusive with the same force and effect as if fully set forth at length herein.

96.     Legal Aid unlawfully discriminated against Plaintiff with respect to the terms and conditions of his employment because of his gender.  By reason thereof, Defendants have violated the NYSHRL.

97.     As a direct and proximate result of Defendants' unlawful discriminatory practices as described herein, Plaintiff was humiliated and embarrassed within the work atmosphere, which was brought about by virtue of Defendants' systematic and continuous unlawful harassment and multiple discriminatory practices and acts.

98.     As a direct and proximate result of Defendants' discriminatory practices, Plaintiff has also sustained significant economic damages.

## AS AND FOR A FIFTH COUNT
(Title VII Retaliation)

99.     Plaintiff repeats and realleges each and every allegation contained in paragraphs of the Complaint numbered "1" through "75" inclusive with the same force and effect as if fully set forth at length herein.

100.    Legal Aid unlawfully retaliated against Plaintiff with respect to the terms and conditions of his employment because he made protected complaints of discrimination.  By reason thereof, Legal Aid has violated Title VII.

101.    As a direct and proximate result of Legal Aid's unlawful retaliatory practices as described herein, Plaintiff was humiliated and embarrassed within the work atmosphere, which was brought about by virtue of Legal Aid's systematic and continuous unlawful harassment and multiple discriminatory practices and acts.

102.    As a direct and proximate result of Legal Aid's retaliation, Plaintiff has also sustained significant economic damages.

## AS AND FOR A SIXTH COUNT
(NYCHRL Retaliation)

103.    Plaintiff repeats and realleges each and every allegation contained in paragraphs of the Complaint numbered "1" through "75" inclusive with the same force and effect as if fully set forth at length herein.

104.    Defendants unlawfully retaliated against Plaintiff with respect to the terms and conditions of his employment because he made protected complaints of discrimination.  By reason thereof, Defendants have violated the NYCHRL.

105.    As a direct and proximate result of Defendants' unlawful retaliatory practices as described herein, Plaintiff was humiliated and embarrassed within the work atmosphere, which

14

was brought about by virtue of Defendants' systematic and continuous unlawful harassment and multiple discriminatory practices and acts.

106.    As a direct and proximate result of Defendants' retaliation, Plaintiff has also sustained significant economic damages.

## AS AND FOR A SEVENTH COUNT
### (NYSHRL Retaliation)

107.    Plaintiff repeats and realleges each and every allegation contained in paragraphs of the Complaint numbered "1" through "75" inclusive with the same force and effect as if fully set forth at length herein.

108.    Defendants unlawfully retaliated against Plaintiff with respect to the terms and conditions of his employment because he made protected complaints of discrimination.  By reason thereof, Defendants have violated the NYSHRL.

109.    As a direct and proximate result of Defendants' unlawful retaliatory practices as described herein, Plaintiff was humiliated and embarrassed within the work atmosphere, which was brought about by virtue of Defendants' systematic and continuous unlawful harassment and multiple discriminatory practices and acts.

110.    As a direct and proximate result of Defendants' retaliation, Plaintiff has also sustained significant economic damages.

**WHEREFORE,** Plaintiff demands the following relief:

a)      a money judgment against Defendants for his damages including, but not limited to, lost wages, liquidated damages, lost benefits, other economic damages, shame, humiliation, embarrassment, and mental distress;

b)      reinstatement, or in the alternative front pay;

15

c)      an award of punitive damages and attorneys' fees;

e)      pre-judgment interest and costs; and

f)      such further and additional relief as the Court deems just and appropriate under the

circumstances.

COREY STARK PLLC


  /s/
By: Corey Stark (CS-3897)
*Attorneys for Plaintiff*
110 East 59th Street, 22nd Floor
New York, New York  10022
(212) 324-3705

16

## JURY DEMAND

Plaintiff demands a trial by jury in this action.

Dated: New York, New York
       June 17, 2019

COREY STARK PLLC

/s/
By: Corey Stark (CS-3897)
*Attorneys for Plaintiff*
110 East 59th Street, 22nd Floor
New York, New York  10022
(212) 324-3705

17